IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
(Southern Division)

| | |
|---|---|
| JASON BALLANTYNE on behalf of himself and others similarly situated,<br><br>  Plaintiff,<br><br>v.<br><br>SPARK ENERGY, INC.<br><br>  Defendant. | :<br>:<br>:<br>: Case No. 2:17-cv-11018<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CLASS ACTION COMPLAINT

**Preliminary Statement**

1. Plaintiff Jason Ballantyne ("Mr. Ballantyne") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Spark Energy, Inc. ("Spark") initiated multiple telemarketing calls to both a residential telephone number and cellular telephone number of Mr. Ballantyne's, both of which he placed on the National Do Not Call Registry.

3. Spark made these calls for the purposes of advertising their goods and services, using an automated dialing system, which is prohibited by the TCPA.

4. The Plaintiff never consented to receive the calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on

behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of the Defendant.

5. A class action is the best means of obtaining redress for the Defendant's wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6. Plaintiff Jason Ballantyne is a resident of the state of Michigan and this District.

7. Defendant Spark Energy, Inc. is a Delaware corporation that has its principal office in Texas, and conducts business in this District.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims occurred here.

## The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

The TCPA Prohibits Automated Telemarketing Calls

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

16. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

### Factual Allegations

17. Spark provides home electricity and gas services to residential and business customers.

18. Spark provides those services in more than ten states, including in Illinois and Michigan.

19. To generate new clients, Spark relies on telemarketing.

20. In fact, as it explained in its 2016 10-K filing, "Our marketing efforts to consumers, including but not limited to telemarketing, door-to-door sales, direct mail and online marketing, are subject to consumer protection regulation including state deceptive trade practices acts, Federal Trade Commission ("FTC") marketing standards, and state utility commission rules

4

governing customer solicitations and enrollments, among others. By way of example, telemarketing activity is subject to federal and state do-not-call regulation."

21. In fact, Spark's 10-K categorizes outbound telemarketing as "a significant part of our marketing efforts."

22. Spark's 10-K has a particular focus on the TCPA, including Spark's use of third party vendors to do some of its telemarketing: "Our vendors are essential to our telemarketing and door-to-door sales activities. Our ability to increase revenues in the future will depend significantly on our access to high quality vendors. If we are unable to attract new vendors and retain existing vendors to achieve our marketing targets, our growth may be materially reduced."

23. However, the 10-K acknowledges the risk associated with this conduct: "We are also subject to liability under the TCPA for actions of our third party vendors who are engaging in outbound telemarketing efforts on our behalf."

24. Despite its knowledge of their existence, Spark's marketing practices ran afoul of these regulations.

25. One of Spark's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit potential customers.

26. Spark uses ATDS equipment that has the capacity to store or produce telephone numbers to be called.

27. Spark engages this use of this equipment because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

28. Through this method, Spark shifts the burden of wasted time to the consumers it calls with unsolicited messages.

Calls to Mr. Ballantyne

29. Mr. Ballantyne is, and was at all times mentioned herein, a "person" as defined by 47 U.S.C. § 153(39).

30. Mr. Ballantyne's telephone number, (248) 719-XXXX, is a phone number assigned to a cellular service.

31. Mr. Ballantyne placed his home telephone number, (810) 344-XXXX on the National Do Not Call Registry in March of 2015.

32. Despite Plaintiff taking the affirmative step of registering his telephone number on the National Do Not Call Registry, Spark placed automated telemarketing calls to both numbers.

33. For a period of approximately six months, Mr. Ballantyne regularly received automated telemarketing from Spark.

34. On many occasions, Mr. Ballantyne received automated telemarketing from Spark, including on February 28, 2015.

35. When Mr. Ballantyne answered the calls from Spark, he was subjected to a scripted pitch about how Spark could save him money.

36. On several separate occasions, Mr. Ballantyne requested that Spark cease contacting him.

37. Spark, however, continued to call Mr. Ballantyne more than 31 days after his initial request to cease calling.

38. Mr. Ballantyne did not provide prior express written consent, or express any prior interest to Defendant or any of its agents to receive any telemarketing calls, including those that were ATDS-generated.

39. When the calls were answered, there was a lengthy pause and a click followed by silence before a human voice came on the line, which indicated to the Plaintiff that the call was made using an ATDS.

40. Furthermore, the generic nature of the telemarketing pitch the Plaintiff received, as well as the geographic location between the Plaintiff and the Defendant indicates that an automated process was used to make the calls.

Calls to Other Individuals and Associated Complaints

41. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls, and their privacy was improperly invaded.

42. Moreover, these calls injured Plaintiff and the putative class because they were frustrating, obnoxious, annoying, and were a nuisance.

43. Unfortunately, Mr. Ballantyne is not the only individual who has received unsolicited calls for Spark, as other individuals have voiced their complaints:

> They're Spark Energy - a total scam trying to add their "natural gas" surcharge to your PG&E bill.
> Author: TS
>
> Spark Energy = Their third party company called me from 5592424128. When I asked to be removed from their call list, they hung up on me. I repeatedly called the number back and was repeatedly hung up on.
> Author: Miss T

*See* http://800notes.com/Phone.aspx/1-559-242-4128.

7

## Class Action Allegations

44. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

45. The classes of persons Plaintiff proposes to represent are tentatively defined as:

CLASS 1 – DNC CLASS

All persons within the United States: (a) whose residential phone numbers were registered on the Do Not Call Registry; (b) who, within the four years before the filing of the initial Complaint, through the date of class certification (c) received more than one telemarketing call within any twelve-month period (d) from, or on behalf of, Defendant.

CLASS 2 – ATDS CLASS

All persons within the United States: (a) Defendant, and/or a third party acting on their behalf, made one or more non-emergency telephone calls; (b) promoting Defendant's products or services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

46. Excluded from the classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

47. The classes as defined above are identifiable through phone records and phone number databases.

48. The potential class members number at least in the thousands, since automated telemarketing campaigns make calls to hundreds of thousands of individuals a day. Individual joinder of these persons is impracticable.

49. Plaintiff is a member of the proposed classes.

50. There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated telemarketing to call cellular telephones;

    b. Whether Defendant violated the TCPA by calling individuals on the National Do Not Call Registry;

    c. Whether Defendant placed calls without obtaining the recipients' prior consent for the call;

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

51. Plaintiff's claims are typical of the claims of class members. Plaintiff's claims, like the claims of the classes, arise out of the same common course of conduct by Spark and are based on the same legal and remedial theories.

52. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the classes, he will fairly and adequately protect the interests of the classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

53. Common questions of law and fact predominate over questions affecting only individual class members. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

54. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves

9

judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

55. The likelihood that individual members of the classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

56. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Calling Provisions

57. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58. The foregoing acts and omissions of Spark and/or its affiliates, agents, and/or other persons or entities acting on Spark's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the classes using an ATDS and/or artificial or prerecorded voice.

59. As a result of Spark's and/or its affiliates, agents, and/or other persons or entities acting on Spark's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the classes presumptively are entitled to an award of $500 in damages for each and every call made to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff and members of the classes are also entitled to and do seek injunctive relief prohibiting Spark and/or its affiliates, agents, and/or other persons or entities acting on

Spark's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

61. The Defendant's violations were negligent and/or knowing.

## Count Two:
## Violation of the TCPA's Automated Calling Provisions

62. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

63. The Defendant violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

64. Plaintiff and members of the classes are also entitled to and do seek injunctive relief prohibiting Spark and/or its affiliates, agents, and/or other persons or entities acting on Spark's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to numbers on the National Do Not Call Registry in the future.

65. The Defendant's violations were negligent and/or knowing.

## Relief Sought

For himself and all class members, Plaintiff request the following relief:

A. Certification of the proposed classes;

B. Appointment of Plaintiff as representative of the classes;

C. Appointment of the undersigned counsel as counsel for the classes;

D. A declaration that Spark and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Spark and/or its affiliates, agents, and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F. An award to Plaintiff and the classes of damages, as allowed by law;

G. Leave to amend this Complaint to conform to the evidence presented at trial; and

H. Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

*/s/ Edward A. Broderick*
Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
99 High Street, Suite 304
Boston, MA 02110
(617) 738-7080
Fax (617) 830-0327
ted@broderick-law.com
anthony@broderick-law.com

Brian K. Murphy
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
Fax (614) 488-0401
murphy@mmmb.com

I. Matthew Miller (Local Counsel)
Swistak & Levine, P.C.
30833 Northwestern Hwy., Suite 120
Farmington Hills, MI 48334
(248) 851-8000
Fax (248) 851-4620
mmiller@swistaklevine.com